## IN THE UNITED STATES DISTRICT COURT OF KANSAS
## AT KANSAS CITY

| | | |
|---|---|---|
| **SARA LORETTA COOK,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **Case No: 2:18-cv-02216** |
| | ) | |
| **TOPEKA CORRECTIONAL FACILITY** | ) | |
| <u>Serve at:</u> | ) | |
| **815 S.E. Rice Road,** | ) | |
| **Topeka, Kansas 66607** | ) | |
| | ) | |
| **and** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **KANSAS DEPARTMENT OF CORRECTIONS** | ) | |
| <u>Serve at:</u> | ) | |
| **Derick Schmidt** | ) | |
| **Attorney General, State of Kansas** | ) | |
| **120 SW 10 Ave, #2** | ) | |
| **Topeka, Kansas 66612** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **CORIZON HEALTH, INC.** | ) | |
| <u>Serve at:</u> | ) | |
| **The Corporation Company, Inc.** | ) | |
| **112 SW 7th Street, Suite 3C** | ) | |
| **Topeka, Kansas 66603** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DR. BRECK EDDS, MD** | ) | |
| <u>Serve at:</u> | ) | |
| **815 S.E. Rice Road,** | ) | |
| **Topeka, Kansas 66607** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DR. JOY HIRAMOTO, MD** | ) | |
| <u>Serve at:</u> | ) | |
| **815 S.E. Rice Road,** | ) | |
| **Topeka, Kansas 66607** | ) | |
| | ) | |
| **and** | ) | |

**DEBRA MACKEY, APRN** )
<u>Serve at:</u> )
**815 S.E. Rice Road,** )
**Topeka, Kansas 66607** )
)
**and** )
)
**LORI COX, LPN** )
<u>Serve at:</u> )
**815 S.E. Rice Road,** )
**Topeka, Kansas 66607** )
)
**and** )
)
**LEANNA HERRMAN, RN** )
<u>Serve at:</u> )
**815 S.E. Rice Road,** )
**Topeka, Kansas 66607** )
)
**and** )
)
**NANCY EMERY, LPN** )
<u>Serve at:</u> )
**815 S.E. Rice Road,** )
**Topeka, Kansas 66607** )
)
**and** )
)
**LUDEEN EARLEYLINE, LPN** )
<u>Serve at:</u> )
**815 S.E. Rice Road,** )
**Topeka, Kansas 66607** )
)
**and** )
)
**SHANNON MEYER, WARDEN** )
Serve at: )
**815 S.E. Rice Road,** )
**Topeka, Kansas 66607** )
)
**and** )
)
**JOHN AND JANE DOES 1-30,** )
)
    **DEFENDANTS.** )

## FIRST AMENDED COMPLAINT

Plaintiff, Sara Loretta Cook, by and through her attorneys of record, states as follows for her First Amended Complaint against the named Defendants above.

## INTRODUCTION

1.      This is a civil rights lawsuit brought by Sara Loretta Cook (sometimes hereinafter "Cook"), a victim of the denial of medical care while incarcerated at Topeka Correctional Facility, a Kansas Department of Corrections state prison for women. This cause of action arises out of Defendants' deprivation of Plaintiff's federal constitutional and statutory rights. Plaintiff seeks to recover under federal statutes because, among other things, Defendants deprived her of guaranteed rights while acting under the color of law.

2.      Cook brings Count I and II of this First Amended Complaint pursuant to 42 U.S.C. § 1983 to redress violations of Cook's rights under the Eighth and Fourteenth Amendments to the U.S. Constitution to be free from cruel and unusual punishment while she was incarcerated at Topeka Correctional Facility. Cook therein seeks actual, consequential, and punitive damages, as well as attorneys' fees and court costs from Defendants pursuant to 42 U.S.C. § 1988.

3.      Jurisdiction is proper in this Court under the Eighth and Fourteenth Amendments to the United States Constitution; 42 U.S.C. § 1983 and 1988; and 28 U.S. § 1331 and 1343.

4.      This Court also has jurisdiction to hear and grant:

a.      Plaintiff's prayer for relief on her substantive federal civil rights claim, pursuant to 42 U.S.C. § 1983, and others; and

b.      Plaintiff's prayer for an award of the costs of litigation, pursuant to 42 U.S.C. § 1988(b), and others.

5.     Venue is appropriate within this judicial district, pursuant to 28 U.S.C. § 1391(b)(1)(2), because, among other things, Defendants and Cook reside in this judicial district and a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

## PARTIES

6.     Plaintiff, Sarah Loretta Cook, is a resident of Bonner Springs, Wyandotte County, Kansas. She is over the age of 18 and resides within the District of Kansas.

7.     Upon information and belief, Topeka Correctional Facility, a political subdivision of the State of Kansas, is charged with responsibility for the inmates at its facility by defendant Kansas Department of Corrections and participated in the employment of correctional officers, staff, and medical personnel, including but not limited to defendants Dr. Breck Edds, MD, Dr. Joy Hiramoto, MD, Debra Mackey, APRN, Lori Cox, LPN, LeAnna Herrman, RN, Nancy Emery, LPN, Ludeen Earleyline, LPN, and defendants John Doe and Jane Doe #'s 1-30 and pursuant to the doctrine of respondeant superior, are vicariously liable for the acts, errors and omissions of their agent/employees/servants, defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, and defendants John Doe and Jane Doe #'s 1-30.

8.     At the time of the acts, occurrences and omissions complained of herein and at all times mentioned, defendant Topeka Correctional Facility (sometimes hereinafter "defendant TCF") operated as a correctional facility under the oversight of defendant Kansas Department of Corrections as a state prison that houses women. It is a recognized legal entity that can sue and/or be sued, with its principal place of business and mailing address located at 815 S.E. Rice Road, Topeka, Kansas 66607. Defendant TCF is located in Shawnee County, Kansas. Defendant TCF can be served by serving process at 815 S.E. Rice Road, Topeka, Kansas 66607.

4

9.      Upon information and belief and at the time of the acts, occurrences and omissions complained of herein and at all times mentioned, Kansas Department of Corrections (hereinafter "defendant KDOC"), a political subdivision of the State of Kansas, is charged with the oversight, control, governance, and supervision of the State of Kansas' correctional facilities, including defendant TCF.

10.     Defendant Kansas Department of Corrections is a department of the State of Kansas created by Section 75-5201, et seq., the purpose of which is to establish a policy of treatment of persons convicted of felonies in the State of Kansas by placing maximum emphasis on rehabilitation of each such person while in the custody of the State or under the jurisdiction of the Courts of this State, consistent with the interests and safety of the public, so that a maximum of persons so convicted may be returned to private life in the communities of the state with improved work habits, education, mental and physical health and attitudes necessary to become and remain useful and self-reliant citizen. It can be served via the Attorney General of the State of Kansas, Derek Schmidt, at 120 SW 10 Ave, #2, Topeka, Kansas 66612.

11.     Upon information and belief, Corizon Health, Inc.[1] were the principals and/or employers of defendants Dr. Breck Edds, MD, Dr. Joy Hiramoto, MD, Debra Mackey, APRN, Lori Cox, LPN, LeAnna Herrman, RN, Nancy Emery, LPN, Ludeen Earleyline, LPN, and defendants John Doe and Jane Doe #'s 1-30 and pursuant to the doctrine of *respondeant superior*, are vicariously liable for the acts, errors and omissions of their agent/employees/servants, defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, and defendants John Doe and Jane Doe #'s 1-30. Defendant Corizon Health, Inc. was, at all times relevant hereto, a Delaware corporation duly organized and existing under the laws of the State of Delaware and is and was

---

[1] Corizon Health, Inc. was formerly known as Prison Health Care Services.

engaged in providing medical care and treatment to persons afflicted with illness and disease in correctional facilities.

12.     At the time of the acts, occurrences and omissions complained of herein and at all times mentioned, defendant Corizon Health, Inc. (sometimes hereinafter "defendant Corizon") operated as a correctional healthcare provider and upon information and belief, is contracted by the State of Kansas to provide healthcare to Kansas correctional facilities, including TCF. Corizon can be served by serving process on its registered agent for the service of process, designated by Corizon as The Corporation Company, Inc., 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

13.     Corizon states about itself that it is the correctional healthcare pioneer and leader for 40 years; that it provides client partners with high quality healthcare and reentry services that will improve the health and safety of their patients, reduce recidivism and better the communities where they live and work; that they are built on innovation and expertise; and that their people, practices and commitment to success through evidence-based medicine enable them to consistently meet and exceed client expectations.

14.     Upon information and belief, at the time of the acts, occurrences and omissions complained of herein and at all times mentioned, defendant Dr. Breck Edds, MD (sometimes "defendant Edds") was and is a licensed physician holding himself out to the public as a medical doctor specializing in gynecology and obstetrics at, among other places, TCF and/or Corizon. Defendant Edds is a doctor of gynecology and obstetrics and practices in his areas of specialty at defendants TCF and/or Corizon. At all times relevant as alleged in this First Amended Complaint, defendant Edds was acting within the course and scope of his employment and/or agency with TCF, KDOC, and/or Corizon. Defendant Edds resides within the District of Kansas and is subject

to this Court's jurisdiction. Defendant Edds can be personally served where he practices medicine, located at 815 S.E. Rice Road, Topeka, Kansas 66607.

15.     Upon information and belief, at the time of the acts, occurrences and omissions complained of herein and at all times mentioned, defendant Dr. Joy Hiramoto, MD (sometimes "defendant Hiramoto") was and is a licensed physician holding herself out to the public as a medical doctor specializing in psychiatry and psychiatry, geriatric at, among other places, TCF and/or Corizon. Hiramoto is a doctor of psychiatry and psychiatry, geriatric and practices in her areas of specialty at defendants TCF and/or Corizon. At all times relevant as alleged in this First Amended Complaint, Hiromoto was acting within the course and scope of her employment and/or agency with TCF, KDOC, and/or Corizon. Hiramoto resides within the District of Kansas and is subject to this Court's jurisdiction. She can be personally served where she practices medicine, located at 815 S.E. Rice Road, Topeka, Kansas 66607.

16.     Upon information and belief, at the time of the acts, occurrences and omissions complained of herein and at all times mentioned, defendant Debra Mackey (sometimes "defendant Mackey") was and is an Advanced Practice Registered Nurse ("APRN") at, among other places, TCF and/or Corizon. At all times relevant as alleged in this First Amended Complaint, defendant Mackey was acting within the course and scope of her employment and/or agency with TCF, KDOC, and/or Corizon. Mackey resides within the District of Kansas and is subject to this Court's jurisdiction. She can be personally served where she is employed as an APRN, located at 815 S.E. Rice Road, Topeka, Kansas 66607.

17.     Upon information and belief, at the time of the acts, occurrences and omissions complained of herein and at all times mentioned, defendant Lori Cox (sometimes "defendant Cox") was and is a Licensed Practical Nurse ("LPN") at, among other places, TCF and/or Corizon.

At all times relevant as alleged in this First Amended Complaint, defendant Cox was acting within the course and scope of her employment and/or agency with TCF, KDOC, and/or Corizon. Cox resides within the District of Kansas and is subject to this Court's jurisdiction. She can be personally served where she is employed as an LPN, located at 815 S.E. Rice Road, Topeka, Kansas 66607.

18.     Upon information and belief, at the time of the acts, occurrences and omissions complained of herein and at all times mentioned, defendant LeAnna Herrman (sometimes "defendant Herrman") was and is a Registered Nurse ("RN") at, among other places, TCF and/or Corizon. At all times relevant as alleged in this First Amended Complaint, Herrman was acting within the course and scope of her employment and/or agency with TCF, KDOC, and/or Corizon. Herrman resides within the District of Kansas and is subject to this Court's jurisdiction. She can be personally served where she is employed as an RN, located at 815 S.E. Rice Road, Topeka, Kansas 66607.

19.     Upon information and belief, at the time of the acts, occurrences and omissions complained of herein and at all times mentioned, defendant Nancy Emery (sometimes "defendant Emery") was and is a Licensed Practical Nurse ("LPN") at, among other places, TCF and/or Corizon. At all times relevant as alleged in this First Amended Complaint, defendant Emery was acting within the course and scope of her employment and/or agency with TCF, KDOC, and/or Corizon. Emery resides within the District of Kansas and is subject to this Court's jurisdiction. She can be personally served where she is employed as an LPN, located at 815 S.E. Rice Road, Topeka, Kansas 66607.

20.     Upon information and belief, at the time of the acts, occurrences and omissions complained of herein and at all times mentioned, defendant Ludeen Earleyline (sometimes

"defendant Earleyline") was and is a Licensed Practical Nurse ("LPN") at, among other places, TCF and/or Corizon. At all times relevant as alleged in this First Amended Complaint, Earleyline was acting within the course and scope of her employment and/or agency with TCF, KDOC, and/or Corizon. Earleyline resides within the District of Kansas and is subject to this Court's jurisdiction. She can be personally served where she is employed as an LPN, located at 815 S.E. Rice Road, Topeka, Kansas 66607.

21. Upon information and belief, at the time of the acts, occurrences and omissions complained of herein and at all times mentioned, defendant Shannon Meyer (sometimes "defendant Meyer") is the current, acting warden, having been appointed as warden of defendant TCF in August 2016 and employed by defendants KDOC and/or TCF. Defendant Meyer resides within the District of Kansas and is subject to this Court's jurisdiction. Defendant Meyer can be personally served where she is employed as an LPN, located at 815 S.E. Rice Road, Topeka, Kansas 66607.

22. Upon information and belief, the John and Jane Doe #1-30 defendants are those un-named, unknown actors and/or co-conspirators employed by and/or are agents, contractors, or subcontractors of defendants TCF, KDOC, and/or Corizon who deprived Plaintiff of her federal constitutional rights and/or conspired with the specifically-named defendants in so doing. These John and Jane Doe defendants include but are not limited to police officers, officials, wardens, supervisors, directors, assistants, clerical personnel, correctional officers, medical personnel, doctors, nurses, employees of defendants TCF, KDOC, and/or Corizon responsible for monitoring all aspects of health care services at defendant TCF, employees of defendants TCF, KDOC, and/or Corizon who exercised final corporate decision-making authority over medical policies and procedures at defendant TCF, and/or other employees of defendants TCF, KDOC, and/or Corizon.

## <u>CONSTITUTIONAL/STATUTORY STANDARDS</u>

23. The Fourteenth Amendment to the United States Constitution states:

> All persons born … in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall … deprive any person of life, liberty, or property, without due process of law; nor deny to any person within this jurisdiction equal protection of laws.

24. 42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any state… subjects or causes to be subjected, any citizen of the United States… within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law…

25. The Eighth Amendment to the United States Constitution states:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

## <u>BASIS OF DEFENDANT TOPEKA CORRECTIONAL FACILITY'S LIABILITY</u>

26.     Defendant TCF's violative policies, procedures, practices, customs and patterns of behavior exemplified in the deliberate indifference to Plaintiff's rights described in this First Amended Complaint, make defendant TCF liable for all of Plaintiff's damages because of its improper training, discipline, retention and supervision of correctional facility officers, facility medical personnel, staff, particularly the Defendant individuals named herein, and/or other employees of defendant TCF, which caused or contributed to cause or were a moving force behind the violation of Plaintiff's constitutional rights.

27.     All of the acts and/or omissions of the defendant individuals named herein, defendant John and Jane Does #1-30, and other defendant TCF employees, took place under color of state law pursuant to, acting upon and in concert with the policies, practices, procedures, patterns, decisions, instructions, orders, and customs of defendant TCF.  Defendant TCF is liable

for damages caused by their respective employees and officers' intentional, wrongful, reckless and negligent acts, errors and/or omissions while the employees and officers were acting under color of state law and while they were acting within the course and scope of their employment with defendant TCF.  All of these acts, errors and/or omissions took place under circumstances where defendant TCF, as well as the Defendant individuals named herein are liable as governmental entities, employees and sworn law enforcement officers in the State of Kansas. Defendant TCF's liability is based upon allegations including but not limited to the following things, all of which demonstrate patterns of behavior and deliberate indifference to the issues raised in this First Amended Complaint and to the rights of citizens, all of which led to, or were a moving force in contributing to, the deprivations of rights secured by the federal constitution as well as federal laws:

    a.  Violation and deprivation of constitutional rights as set out in this First Amended Complaint;

    b.  Inadequate training and instruction of employees on the incarceration of inmates, constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

    c.  Inadequate supervision of employees as to the incarceration of inmates, constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

    d.  Inadequate discipline of employees as to the incarceration of inmates, constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

    e.  Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees regarding the incarceration of inmates, constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

f.   Abuse of power on citizens of the United States of America;

g.   Acquiescence in and notice of the actions and omissions described throughout this First Amended Complaint;

h.   Failure to take remedial action against a known pattern of misconduct by correctional facility officers, facility medical personnel, and other TCF employees;

i.   Failure to take significant steps to prevent a known risk of denial of medical care and treatment;

j.   Tolerance of misconduct of correctional facility officers, facility medical personnel, and employees and failing to follow up and properly and thoroughly investigate misconduct of correctional facility officers, facility medical personnel, and employees of TCF resulting in the denial of medical care for incarcerated citizens;

k.   Deliberate indifference to, and conscious disregard of, a high risk that correctional facility officers, facility medical personnel, and employees would deny medical care and treatment to incarcerated citizens in violation of Plaintiff's protected rights;

l.   Inadequate training and instruction of employees charged with the supervision, observation and care of inmates, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of inmates without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States;

m.   Inadequate supervision of employees charged with the supervision, observation and care of inmates, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of detainees and suspects without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States;

n.   Inadequate discipline of employees charged with the supervision, observation and care of inmates, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of detainees and suspects without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States; and

o.   Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees charged with the supervision, observation and care of detainees and suspects, like Plaintiff, and the duty to maintain and keep such

persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of detainees and suspects without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States.

28.     These actions, omissions, policies, practices, procedures, patterns, decisions, orders, and customs of defendant TCF were the cause, were the contributing cause and/or were the moving force behind the constitutional and other violations described in this First Amended Complaint. These things are established, at least in part, by proof of knowledge of, acquiescence in, or ratification of all of wrongful conduct noted herein.

29.     Defendant TCF and the other named defendants acted in concert, were joint tortfeasors and are jointly and severally liable to Plaintiff.

30.     The conduct alleged in this First Amended Complaint violated clearly established federal laws designed to protect the rights of citizens of this state, of which every reasonably competent and prudent official in defendant TCF's position would have, or should have, been aware.

31.     As to defendant TCF's actions, errors and omissions towards Plaintiff, there was no objectively reasonable reliance on existing law.

## BASIS OF DEFENDANT KANSAS DEPARTMENT OF CORRECTIONS' LIABILITY

32.     Defendant KDOC's violative policies, procedures, practices, customs and patterns of behavior exemplified in the deliberate indifference to Plaintiff's rights described in this First Amended Complaint, make defendant KDOC liable for all of Plaintiff's damages because of its improper training, discipline, retention and supervision of correctional facility officers, facility medical personnel, staff, particularly the Defendant individuals named herein, and/or other employees of defendant KDOC, which caused or contributed to cause or were a moving force behind the violation of Plaintiff's constitutional rights.

33.     All of the acts and/or omissions of the defendant individuals named herein, defendant John and Jane Does #1-30, other defendant KDOC employees, took place under color of state law pursuant to, acting upon and in concert with the policies, practices, procedures, patterns, decisions, instructions, orders, and customs of defendant KDOC.  Defendant KDOC is liable for damages caused by their respective employees and officers' intentional, wrongful, reckless and negligent acts, errors and/or omissions while the employees and officers were acting under color of state law and while they were acting within the course and scope of their employment with defendant KDOC.  All of these acts, errors and/or omissions took place under circumstances where defendant KDOC, as well as the Defendant individuals named herein are liable as governmental entities, employees and sworn law enforcement officers in the State of Kansas. Defendant KDOC's liability is based upon allegations including but not limited to the following things, all of which demonstrate patterns of behavior and deliberate indifference to the issues raised in this First Amended Complaint and to the rights of citizens, all of which led to, or were a moving force in contributing to, the deprivations of rights secured by the federal constitution as well as federal laws:

    a.  Violation and deprivation of constitutional rights as set out in this First Amended Complaint;

    b.  Inadequate training and instruction of employees on the incarceration of inmates, constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

    c.  Inadequate supervision of employees as to the incarceration of inmates, constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

    d.  Inadequate discipline of employees as to the incarceration of inmates, constitutional requirements, the provision and/or administration of proper and adequate medical

care, and attention when needed and investigation of alleged federal constitutional violations;

e.  Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees regarding the incarceration of inmates, constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

f.  Abuse of power on citizens of the United States of America;

g.  Acquiescence in and notice of the actions and omissions described throughout this First Amended Complaint;

h.  Failure to take remedial action against a known pattern of misconduct by correctional facility officers, facility medical personnel, and other TCF employees;

i.  Failure to take significant steps to prevent a known risk of denial of medical care and treatment;

j.  Tolerance of misconduct of correctional facility officers, facility medical personnel, and employees and failing to follow up and properly and thoroughly investigate misconduct of correctional facility officers, facility medical personnel, and employees of TCF resulting in the denial of medical care for incarcerated citizens;

k.  Deliberate indifference to, and conscious disregard of, a high risk that correctional facility officers, facility medical personnel, and employees would deny medical care and treatment to incarcerated citizens in violation of Plaintiff's protected rights;

l.  Inadequate training and instruction of employees charged with the supervision, observation and care of inmates, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of inmates without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States;

m.  Inadequate supervision of employees charged with the supervision, observation and care of inmates, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of detainees and suspects without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States;

n.  Inadequate discipline of employees charged with the supervision, observation and care of inmates, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of detainees and suspects without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States; and

o.  Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees charged with the supervision, observation and care of detainees and suspects, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of detainees and suspects without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States.

34.   These actions, omissions, policies, practices, procedures, patterns, decisions, orders, and customs of defendant KDOC were the cause, were the contributing cause and/or were the moving force behind the constitutional and other violations described in this First Amended Complaint. These things are established, at least in part, by proof of knowledge of, acquiescence in, or ratification of all of wrongful conduct noted herein.

35.   Defendant KDOC and the other named defendants acted in concert, were joint tortfeasors and are jointly and severally liable to Plaintiff.

36.   The conduct alleged in this First Amended Complaint violated clearly established federal laws designed to protect the rights of citizens of this state, of which every reasonably competent and prudent official in defendant KDOC's position would have, or should have, been aware.

37.   As to defendant KDOC's actions, errors and omissions towards Plaintiff, there was no objectively reasonable reliance on existing law.

## BASIS OF DEFENDANT CORIZON HEALTH INC.'S LIABILITY

38.   Defendant Corizon's violative policies, procedures, practices, customs and patterns of behavior exemplified in the deliberate indifference to Plaintiff's rights described in this First

Amended Complaint, make defendant Corizon liable for all of Plaintiff's damages because of its improper training, discipline, retention and supervision of facility medical personnel, medical staff, particularly the Defendant individuals named herein, and/or other employees of defendant Corizon who provided medical care and treatment to Plaintiff, which caused or contributed to cause or were a moving force behind the violation of Plaintiff's constitutional rights.

39.     All of the acts and/or omissions of the defendant individuals named herein, defendant John and Jane Does #1-30, and other defendant Corizon employees were pursuant to, acting upon and in concert with the policies, practices, procedures, patterns, decisions, instructions, orders, and customs of defendant Corizon.  Defendant Corizon is liable for damages caused by their respective employees and medical personnel's intentional, wrongful, reckless and negligent acts, errors and/or omissions while the employees and medical personnel were acting within the course and scope of their employment with defendant Corizon.  All of these acts, errors and/or omissions took place under circumstances where defendant Corizon is held liable based upon its policies, practices, procedures, patterns, decisions, instructions, orders, and customs which led to the violation of Plaintiff's constitutional rights as set out in this First Amended Complaint. Defendant Corizon's liability is based upon allegations including but not limited to the following things, all of which demonstrate patterns of behavior and deliberate indifference to the issues raised in this First Amended Complaint and to the rights of citizens, all of which led to, or were a moving force in contributing to, the deprivations of rights secured by the federal constitution as well as federal laws:

    a.   Violation and deprivation of constitutional rights as set out in this First Amended Complaint;

    b.   Inadequate training and instruction of employees on constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

c.  Inadequate supervision of employees as to constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

d.  Inadequate discipline of employees as to constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

e.  Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees regarding constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

f.  Acquiescence in and notice of the actions and omissions described throughout this First Amended Complaint;

g.  Failure to take remedial action against a known pattern of misconduct by facility medical personnel, and other Corizon employees;

h.  Failure to take significant steps to prevent a known risk of denial of medical care and treatment;

i.  Tolerance of misconduct of facility medical personnel and employees and failing to follow up and properly and thoroughly investigate misconduct of facility medical personnel and employees of Corizon resulting in the denial of medical care for incarcerated citizens;

j.  Deliberate indifference to, and conscious disregard of, a high risk that facility medical personnel and employees of Corizon would deny medical care and treatment to incarcerated citizens in violation of Plaintiff's protected rights;

k.  Inadequate training and instruction of medical personnel and employees charged with the supervision, observation and care of inmates, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of inmates without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States;

l.  Inadequate supervision of medical personnel and employees charged with the supervision, observation and care of inmates, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of detainees and suspects without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States;

18

m. Inadequate discipline of medical personnel and employees charged with the supervision, observation and care of inmates, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of detainees and suspects without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States; and

n. Inadequate supervision, training, and retention with resulting poor personnel decisions as to medical personnel and employees charged with the supervision, observation and care of detainees and suspects, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of detainees and suspects without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States.

40.     These actions, omissions, policies, practices, procedures, patterns, decisions, orders, and customs of defendant Corizon were the cause, were the contributing cause and/or were the moving force behind the constitutional and other violations described in this Fist Amended Complaint. These things are established, at least in part, by proof of knowledge of, acquiescence in, or ratification of all of wrongful conduct noted herein.

41.     Defendant Corizon and the other named defendants acted in concert, were joint tortfeasors and are jointly and severally liable to Plaintiff.

42.     The conduct alleged in this First Amended Complaint violated clearly established federal laws designed to protect the rights of citizens of this state, of which every reasonably competent and prudent official and/or private healthcare provider in defendant Corizon's position would have, or should have, been aware.

43.     As to defendant Corizon's actions, errors and omissions towards Plaintiff, there was no objectively reasonable reliance on existing law.

### FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

44.     Since at least 1990, Plaintiff has been diagnosed with and had Irritable Bowel Syndrome and diverticulitis, and has had a history of ulcerative colitis.

45.     For decades, Plaintiff has been capably managing her medical conditions. A few times a year she would experience a flare up of her gastrointestinal conditions. Her symptoms would include blood in the stool or on the toilet paper and intense abdominal pain.

46.     When she would experience these symptoms, she would immediately contact her internist, who would prescribe the medication "Rowasa"[2], and she would place herself on a bland diet. After not more than four days of this medical regiment, she would recover, and her condition would improve. This would be a repeated issue, and she would repeatedly recover. If she did not take these steps, then she was told by her doctors that her bowel could perforate, and the result could be fatal.

47.     On April 1, 2016, Plaintiff was taken at Wyandotte Detention Center, where she was incarcerated for thirty-two (32) days.

48.     During her time at Defendant Wyandotte Detention Center, her medical condition was in the very beginning stages of flaring up, and she began experiencing cramping and specks of blood in her stool and she was not able to eat. She tried her best to keep herself on a bland diet, and stay away from certain foods. However, the bland diet alone did not resolve her issue.

49.     On May 3, 2016, Plaintiff was transferred to Defendant TCF to finish out her sentence.

50.     At all relevant times, TCF and/or Corizon employed Defendants Dr. Breck Edds, Dr. Joy Hiramoto, Debra Mackey, APRN, Lori Cox, LPN, LeAnna Herrman, RN, Nancy Emery, LPN, Ludeen Earleyline, LPN and Defendants John and Jane Does #1-30, and had the ability to control and/or direct their conduct as they performed duties in furtherance of TCF's goals.

---

[2] The generic name for the medication is "Mesalamine Rectal Suspension Enema".

51.     On numerous occasions, Plaintiff complained of her symptoms and requested the medication Rowasa, a bland diet, and at least verbally requested a high protein diet. While at TCF, Plaintiff was seen by Defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, and John and Jane Does #1-30.

52.     Each of the acts alleged herein against Defendants, were committed by them individually, or their agents, servants, and/or employees, while acting under the color of law with approval and knowledge of their superiors.

53.     After arriving at TCF, a medical intake was taken of Plaintiff, and Nurse Tracy Burnette included under the "Medical History", "History of Diseases", that Plaintiff had suffered from "stomach ulcer/GERD" in the past.

54.     Defendants Debra Mackey, APRN, and Lori Cox, LPN, one week after her arrival in her medical records on May 10, 2016 at 9:11 a.m., note, among other notations, the following regarding her symptoms:

> **History:**
> Onset of Symptoms: 2 weeks
> Location of Symptom: epigastric
> Duration of Symptom: "forever"
> Pain: Intermittent Daily
> Recent food intake: eggs, juice
> Meal: Small
> Pain Began: within 1 hour
> Prior Treatment: Tums in county jail (PG 71)
> **History Notes:**
> "They told me they would get me Protonix but I came here instead and now I have nothing."
> **Subjective Notes:**
> I/M to clinic with c/o indigestion…
> **Pain Scale** 8/10
> **Objective Notes:**
> Vitals stable, no signs of distress. I/M reports she was on Tums in county and took Nexium and Pepcid on the outside.
> **ASSESSMENT**
> Alterations In Comfort Due to Gastric Disorder

21

55.     At approximately that same time, Defendants Mackey and Cox, note in Plaintiff's

"Nursing Progress Note", among other notations, the following:

> **Subjective:**
> "Where are my sick call slips? I filled out 3 yesterday and they are no where down here. Do you have them?"
> "I went to the bathroom to urinate this morning and blood started dripping out from my rectum."
> **Pain Scale** 8/10
> I/M to clinic to sick call with c/o bright red blood from her rectum. I/M reports history of constipation and diarrhea but at this time is not having issues with either.

56.     A few hours later, on May 10, 2016 at approximately 12:05 p.m., Defendant Dr.

Joy Hiramoto saw Plaintiff and noted in her "Progress Note", among other notations, the

following:

> **Change in Mental Status:** Change in mood/affect. Change in thought process/content. Description of change: high anxiety, panic.
> **Comments:** IM reported high anxiety, insomnia, physical pain, and panic attacks. We discussed IM's symptoms at length, as well as her fears. IM expressed anxiety due to fearing that her health will deteriorate while she's here and she'll die in prison, and due to feeling powerless to get the help she needs. IM was tearful at times as she shared these things. She described her panic attacks as stemming from excessive physical pain which she fears will not stop.

57.     Defendant Dr. Hiramoto ordered a blood stool "quiac" from the Lab Office.

58.     On May 12, 2016, Defendant Dr. Breck Edds, whose medical specialties are

obstetrics and gynecology, noted, among other notations, on the "Indigestion Flowsheet 070" the

following:

> **History:**
> Onset of Symptoms: 2 weeks
> Location of Symptoms: epigastric
> Duration of Symptoms: "forever"
> Pain: Intermittent Daily
> Recent food intake: cereal, milk, juice
> Meal: Small
> Pain began: within 1 hour
> Prior Treatment: Tums

**History Notes:**

"It makes it impossible to lay down."

**Subjective Notes:**

IM to clinic with c/o indigestion

**Pain Scale** 8/10

**Objective Notes:**

During assessment every time IM opens her mouth gas sounds come out of her mouth

**ASSESSMENT**

Alterations In Comfort Due To Gastric Disorder

59.     In his "Indignation Flowsheet 070", on May 13, 2016, Defendant Dr. Edds notes, among other notations, the following:

**History Notes:**

She states her pain is 24/7 "It never stops." Currently on TUMs, states it is ineffective. She has a history of GERD[3].

**Pain Scale** 6/10

60.     In Plaintiff's "Chart Note", under the "History of Present Fitness" section, the medical record notes, among other notations, the following:

**History of Present Illness:**

This 66 year old female presents with: 1. Evaluation for rectal bleeding
Patient is a 66 y/o CF with complaints of rectal bleeding Has had bleeding from rectum most recently since last Friday but has had off and on her whole life. Has been diagnosed before with spastic colon, irritable bowel, peptic ulcers, acid reflux with esophagitis. Proctoscopes and colonoscopies "the whole works" though hasn't had colonoscopies for a long time. Last colonoscopy 7-8 years ago done at Providence in Wyandotte county; basically most of the tests have come out normal. Has used ROWASA enemas for a week and it usually clears up. Father died of colon cancer age 85. Notes clots and bright red, running into stool.

**CHRONIC PROBLEMS:**

GI: GI Bleeding
Pain Back (Law Back Syndrome)

**Rectum:**

…Fecal occult blood test (FOBT) result was positive.

**Assessment Plan**

GI: GI Bleeding, Chronic

---

[3] "GERD" stands for Gastroesophageal reflux disease.

61.     Plaintiff was seen again by Defendant Hiramoto on May 16, 2016, and in her

"Behavioral Health Encounter" she notes:

> **Comments:** "IM reported sustained anxiety, feelings of panic, and constant worry that her health will deteriorate. She was aware that her physical ailments feed her mental anguish, which in turn continues to feed her physical stress."

62.     Plaintiff goes to see Defendant Hiramoto again on May 17, 2016, and in her

"Behavioral Health Encounter" she notes:

> **History of Present Illness:**
> This 66 year old female presents with: 1. Benefits of treatment
> Ms. Cook is seen per referral. She reports chronic and also acute issues with anxiety and panic, particularly over her health issues, which then make her anxiety and panic worse…
> **Chronic Problems:**
> GI; GI Bleeding
> Pain Back (Low Back Syndrome)

63.     Defendant Edds treated Plaintiff again on May 17, 2016, and notes, among other

notations, the following:

> **History of Present Illness:**
> This 66 year old female presents with 1. Evaluation back pain and GERD
> Patient is 66 y/o CF presenting with CO's of heartburn and back pain… Has heartburn, blood in stool, goes along with constant burping. "the change in food and constant stress have led to constant boiling of acid in my stomach."
> **CHRONIC PROBLEMS:**
> GI: GI Bleeding
> Pain Back (Low Back Syndrome)
> GI: GERD
> **Pain Scale** 7/10
> **Assessment Plan**
> Pain Back (Low Back Syndrome) (724.2), Chronic
> GI: GERD (530.81), Chronic
> GI: GI Bleeding (578.1), Chronic

64.     Defendant Hiramoto notes in her May 17, 2016 "Behavioral Health Encounter" the

following:

> **Chronic Problems**
> GI: GI Bleeding

GI: GERD
Pain Back (Low Back Syndrome)

65.     Plaintiff's medical records, as noted by Defendant Mackey on May 18, 2016, states:

**CHRONIC PROBLEMS:**
GI: GI Bleeding
Pain Back (Low Back Syndrome)
GI: GERD

66.     Defendant Edds noted the same "**CHRONIC PROBLEMS**" as stated in paragraph

65 in Plaintiff's May 22, 2016 medical record.

67.     Again, on May 24, 2016, Defendant Edds notes in Plaintiff's medical record

"**CHRONIC PROBLEMS**" as:

GI: GI Bleeding
Pain Back (Low Back Syndrome)
GI: GERD
PAIN

68.     On May 25, 2016, Defendant Edds ordered Rowosa medication for Plaintiff, and

stated under "Plan:" that "Nursing advised to add to evening listx7 days when medication arrives".

69.     Plaintiff's profuse rectal bleeding continued.

70.     Plaintiff again complains to the nursing staff, and in particular Defendant Nancy

Emery, LPN, on June 17, 2016, and in the medical record for that day it states:

Statement of complaint (in patient's words): Rectal Bleeding getting worse & worse 3 pads
a day (need medicine)
**Pain Scale** 7

71.     Then on June 20, 2016, she again complains to the nursing, particularly Defendant

LeAnna Herrmann, RN, and again nursing notes under the section "General appearance", she

reports: "also having problem with bleeding, I/M reports rectally. She is already referred to the

HCP for this."

72.    In Plaintiff's medical records, Defendant Edds noted the following on June 24, 2016:

**History of Present Illness:** 1. evaluation increased rectal bleeding
    patient here with complaints increased rectal bleeding. hoping to get Rowasa enemas which have been used in past. Patient gives history "IBS" which on questioning states that it is both irritable bowel syndrome and inflammatory bowel syndrome. Notes blood in stool, and drops in stool, sometimes with clots. last saw GI and had colonoscopy over 10 years ago, plans on seeing GI doctor as soon as discharged.
Problem Description
    GI: GI Bleeding
    Pain Back (Low Back Syndrome)
    GI: GERD
    PAIN
**Review of Systems**
    GI        Positive        Blood in stool
**Assessment/Plan**
    Assessment    GI: GI Bleeding (578.1).
    Impression    did not receive Rowasa enemas as approved in FE…
    Plan Orders    She is to schedule a follow-up visit with nursing, please check on status Rowasa enemas…

73.    As of June 24, 2016, almost a month since the Rowasa medication was ordered for Plaintiff, Plaintiff had not received her medication.

74.    On June 30, 2016, Plaintiff returns again to nursing and in her medical records Defendant Ludeen Earleyline, LPN, states the following:

**Subjective:**
    I/M up here for rectal bleeding, UTM concerned because she informed her that she has had about 2 cups full today. Call place to HCP about this and explained the whole situation that is going down, new orders to keep I/M in the clinic I'll leave at 2300 and document what I see each time she uses the bathroom.

75.    Defendant Earleywine noted on June 30, 2016 the following:

    I/M pacing around the clinic area and the foyer, drinking water the whole time up here.
    1850 dime size blood clot with flecks of bright red blood, maybe fill a 1"x1" square
    1955 - moderate amount of specked bright red blood
    2110 – mod amount of stool with flecks of blood noted

2115 Really cold, wants to know if staff has a towel or blanket, explained that we do not have those items up here, asked if she could got (sic) outside and warm up, explained my orders was to stay in the clinic.
2215 – small amount of stool with flecks of blood noted
2230 – "not sure if it is gas or blood, maybe 10 specks of bowel and no blood seen.
2245 – Med loose BM with small amount of bright red blood noted.
2245 I/M allowed to go back to her dorm

76.     On July 1, 2016, Defendant Earleywine notes that there was no room for Plaintiff in the infirmary and no medical providers on the premises. It is noted that Plaintiff "will have to seek treatment on the outside."

77.     Even though she reported her symptoms and made multiple requests, Plaintiff never received her bland diet while incarcerated at Defendant Topeka Correctional Facility and did not receive the medication ordered by Defendant Edds until just a few days before her release from Defendant Topeka Correctional Facility. She intensely suffered as her symptoms worsened each day she was incarcerated at Defendant Topeka Correctional Facility. She began taking the Rowasa medication only a couple days before she was released.

78.     On or about July 5, 2016, Plaintiff was released from TCF, having been incarcerated there for approximately sixty-four (64) days without the medication, having only just received it a couple days before she was released, and at no time during her incarnation at defendant TCF did she receive the requested bland diet she required to recover from her medical condition.

79.     Upon release and having just received the medication before her release, Plaintiff continued taking the medication and put herself on a bland diet. Her body was not receiving the medication well. She tried the medication and bland diet for several days after her release.

80.     A friend of Plaintiff made an appointment for Plaintiff with her Gastrointestinal Doctor, Dr. Dushyant Singh. Plaintiff was able to see Dr. Singh on July 15, 2016. He prescribed

additional medication and told her that if her condition worsens then she needs to go to the hospital. During this visit, she tried to schedule a colonoscopy for as soon as possible; however, no appointment for a colonoscopy was available until July 27, 2016.

81.     Plaintiff's condition worsened, and on or about July 18, 2016, while she was at home, she heard a "pop" in her abdomen. She went to the Shawnee Mission Medical Center's ("SMMC") Emergency Room on July 19, 2016 and was not seen for four hours. She could not stand the pain and sitting any longer, so she asked her friend who had brought her to the hospital to take her home so she could lay down. Plaintiff was in and out of consciousness during this time due to her medical condition.

82.     But Plaintiff's condition continued to worsen, and she was taken back to Shawnee Mission Medical Center's ("SMMC") Emergency Room the following day, on July 20, 2016. She was admitted to SMMC. The Emergency Room records note that she presented in the emergency room with a four-month history of bright red rectal bleeding – described as "grossly bloody and blood with stool" – and severe abdominal pain.

83.     On July 20, 2016, Plaintiff underwent an emergent exploratory laparoscopy and it Plaintiff was found to have a perforated bowel. During surgery, she underwent a left and sigmoid colon resection, and a colostomy was necessary. As a result, Plaintiff will require ongoing medical care and treatment, and additional surgery(s).

84.     Through their deliberate indifference to Plaintiff's serious medical needs, Defendants collectively subjected her to and engaged in conduct that deprived Plaintiff of her constitutional right to be free from cruel and unusual punishment guaranteed by the Eighth Amendment to the United States Constitution as applied to the States through the Fourteenth Amendment.

85.     The denial of medical care for Plaintiff while incarcerated at Defendant TCF was a result of the policy, practice, and custom of Defendants TCF, KDOC and/or Corizon to inadequately supervise, train, and discipline its facility medical personnel, correctional facility officers, staff, and/or employees in the proper care and treatment of incarcerated individuals. Defendants TCF, KDOC and Corizon's policies, practices, customs, and actions – which, through the conduct and deliberate omissions of defendants TCF, KDOC and Corizon's personnel assigned to TCF, were so persistent and widespread as to represent official policy and action – recklessly disregarded substantial risk of serious harm to all inmates, including Plaintiff, and inflicted injuries that are actionable under 42 U.S.C. § 1983.

86.     Defendants TCF's, KDOC's and Corizon's abdication of policy-making and oversight responsibilities, their collective and tacit authorization of personnel misconduct, and/or their inadequate policies, procedures, practices, customs, and actions – as well as their inadequate training, supervision, direction , and control that, if effective, would have eliminated those systemic deficiencies – rose to the level of deliberate indifference and resulted in a constitutional injury that manifested itself in the unnecessary and wanton infliction of pain and injury to Plaintiff.

87.     The policy, practice, and custom of Defendants TCF, KDOC and/or Corizon is that when an incarcerated individual, such as the Plaintiff, has a life-threatening medical condition and medical staff and law enforcement officers to do not provide adequate medical care and treatment, other facility medical personnel, correctional facility officers, staff, and/or employees do not intervene to comply with the Eighth Amendment and provide medical care and treatment and do not report the denial of medical care of incarcerated individuals needing medical care and treatment.

88.     The policy, practice, and custom of Defendants TCF, KDOC and/or Corizon with respect to the allegations of the denial of medical care reported by incarcerated individuals, is to conduct a minimal investigation designed to exonerate the medical staff and law enforcement officers involved rather than discover the true facts of the incident.

89.     As a result of inadequate investigations into the allegations of the denial of medical care, facility medical personnel, correctional facility officers, staff, and/or employees employed and/or agents of Defendants TCF, KDOC and/or Corizon conclude that their denial of medical care should not result in discipline, termination, or criminal prosecution of individuals involved in the care and treatment of inmates.

90.     The above policies and practices of Defendants TCF, KDOC and/or Corizon have resulted in a negligent and deliberately indifferent culture when it comes to providing medical care and treatment to incarcerated individuals. This negligence and deliberately indifferent culture has become an acceptable and customary part of the care and treatment of incarcerated individuals at Defendant TCF.

91.     Defendants TCF's, KDOC's and Corizon's official policies, procedures, practices, customs, and actions, which are the moving force behind Plaintiff's injuries, operated to deprive Plaintiff of the right to adequate and appropriate diagnosis of her serious medical condition, and but for the same, Plaintiff would not have been deprived of rights secured by the Eighth and Fourteenth Amendments to the Constitution.

92.     Collectively Defendants' acts and omissions not only contemplate a reckless disregard of substantial risks of serious harm to inmate health and safety, but said acts and omissions are also sufficiently harmful to evidence deliberate indifference to the serious medical needs of Plaintiff and the other inmates in their charge.

93.     Defendants' acts and omissions were not only intentionally willful, wanton, reckless and malicious – in that they are the product of utilization management practices that elevate cost savings over prevailing medical practices and patient care – but they also evince a complete and deliberate indifference to and both a conscious and a reckless disregard of the rights of Plaintiff and all inmates in the custody of defendant KDOC. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish Defendants or to deter Defendants and others from engaging in like conduct in the future.

94.     Plaintiff is entitled to recover their reasonable attorney's fees, costs, and expenses from Defendants as provided by 42 U.S.C. § 1988.

### COUNT I – 42 U.S.C. § 1983

**Denial/Failure to Provide Medical Care**
**(Against Defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, Meyer, Corizon and John and Jane Does #1-30)**

95.     Each and every one of the paragraphs in this First Amended Complaint is adopted by reference as if restated fully herein.

96.     Defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, Meyer, Corizon, and John and Jane Does 1-30 were aware that Plaintiff may suffer from serious medical conditions that, if not properly treated, pose serious medical harm to her.

97.     Defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, Meyer, Corizon and John and Jane Does 1-30 were made aware that Plaintiff was experiencing severe symptoms as Plaintiff complained of these symptoms on multiple occasions to Defendants, including but not limited to chronic bleeding from her rectum. Defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, Meyer, Corizon and John and Jane Does #1-30 knew

that Plaintiff was experiencing these severe symptoms, including chronic bleeding from her rectum.

98.     Defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, Meyer, Corizon and John and Jane Does 1-30 disregarded the excessive risk to Plaintiff's health and denied medical care and treatment to Cook by failing to proscribe a medically necessary diet, failing to provide medically necessary medication, and failing to address her serious medical need.

99.     As a direct and proximate result of the actions of Defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, Meyer, Corizon and John and Jane Does #1-30, Plaintiff suffered damages and substantial harm, including but not limited to a loss of a significant portion of her colon and bowel requiring her to use a colostomy for the foreseeable future.

100.    The conduct of Defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, Meyer, Corizon and John and Jane Does #1-30 was outrageous because of their deliberate indifference to the rights and well-being of Plaintiff and was wrongful without just cause or excuse, and therefore, Plaintiff is entitled to an award of punitive damages against Defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, and John and Jane Does #1-30.

101.    The actions of Defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, Meyer, Corizon and John and Jane Does #1-30 complained of herein naturally arose from the performance of their duties as doctors, nurses, correctional facility officers, employees, and health care providers at Defendant TCF and as part of their employment by Defendants TCF, KDOC, and/or Corizon.

### COUNT II – 42 U.S.C. § 1983

**Conspiracy**
**(Against Defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, Meyer, and John and Jane Does #1-30)**

102.    Each and every one of the paragraphs in this First Amended Complaint is adopted by reference as if restated fully herein.

103.    Defendants, together and under the color of state law, reached an understanding, engaged in a course of conduct, and otherwise conspired among and between themselves to deprive Plaintiff of her constitutional rights, including her right to adequate medical care and treatment while she was incarcerated, to due process of law, and to be free from cruel and unusual punishment and all basic rights of American citizens faced with criminal proceedings. The conspiracies violated Plaintiff's rights under the Eighth and Fourteenth Amendments and 42 U.S.C. § 1983.

104.    Defendants named in this Count, together with co-conspirators, committed the overt acts set forth in the factual statements above. The overt acts involved the deliberate indifference to the medical needs of Plaintiff, including but not limited to the denial of her request for a bland diet and no meaningful action taken with regard to her requests for medication and medical care.

105.    The overt acts are violative of the constitutionally-protected rights of Plaintiff.

106.    The conspiracies and overt acts were continuing in nature and caused Plaintiff constitutional deprivations, injuries, pain, suffering, and mental anguish.

107.    Because the actions were deliberate, reckless, wanton, and/or cruel, punitive damages are justified.

## COUNT III – 42 U.S.C. § 1983

**Violative Policies, Practices, Customs, Patterns of Conduct and Procedures
(Against Defendants Kansas Department of Corrections, Topeka Correctional Facility,
Corizon Health Inc.)**

108.    Each and every one of the paragraphs in this First Amended Complaint is adopted by reference as if restated fully herein.

109.    Defendants TCF, KDOC and Corizon had in effect, both before and at the time of the events alleged in this First Amended Complaint, policies, practices, patterns of conduct and customs which operated to deprive Plaintiff of her constitutional rights.

110.    Defendants TCF, KDOC and Corizon are liable under 42 U.S.C. 1983 because they established policies and practices that were intended to and did encourage, endorse, and reward their agents and employees for violating the constitutional rights of Plaintiff and other similarly situated persons.  At a minimum, the supervisors and the governmental agents were deliberately indifferent to such constitutional violations.

111.    Defendants TCF, KDOC and Corizon engaged in unlawful and unconstitutional policies, practices, patterns of conduct and customs including, but not limited to the following:

a.  Violation and deprivation of constitutional rights as set out in this First Amended Complaint;

b.  Dismissing TCF inmate medical complaints;

c.  Providing insufficient medical coverage for inmates of TCF;

d.  Refusing to refer ill inmates to the hospital or other outside medical assistance in order to save money;

e.  Hiring medical and nursing personnel indifferent to the medical needs of TCF inmates;

f.  Denying TCF inmates medically necessary transfers to the hospital and necessary medical care;

g.  Hiring medical personnel indifferent to medical emergencies;

h.  Utilizing conservative treatment methodologies unless or until a medical condition becomes emergent, in contravention of prevailing medical practices;

i.  Failure to inform inmates of their conditions and diagnoses and to permit them to participate in decision involving their care;

j.  Failure to provide inmates with qualified medical opinions rendered by on-site and off-site physicians;

k.  Failures to make referrals for offsite specialty medical and diagnostic services, even when the need is obvious to a lay person and both medically necessary and appropriate;

l.  Delay or non-responses to urgent and/or debilitating conditions;

m.  Failures to ensure inmates have timely access to care and to medical personnel who are qualified to diagnose and treat;

n.  Failures to provide cogent nursing directives for prioritizing requests for medical services and sick calls;

o.  Poor quality nursing, including failures to note urgencies, detect progressively degenerating conditions, and noting conditions that require further evaluation and treatment;

p.  Failures to provide continuity of care by not documenting clinical observations, not properly diagnosing medical conditions, and not providing adequate treatment;

q.  Failing to meet widely accepted community standards of care with regard to medical services for ill and/or injured inmates of TCF.

r.  Inadequate training and instruction of employees on the incarceration of inmates, constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

s.  Inadequate supervision of employees as to the incarceration of inmates, constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

t.  Inadequate discipline of employees as to the incarceration of inmates, constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

u.  Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees regarding the incarceration of inmates, constitutional requirements, the provision and/or administration of proper and adequate medical care, and attention when needed and investigation of alleged federal constitutional violations;

v.  Abuse of power on citizens of the United States of America;

w.  Acquiescence in and notice of the actions and omissions described throughout this First Amended Complaint;

x.  Failure to take remedial action against a known pattern of misconduct by correctional facility officers, facility medical personnel, and other TCF, KDOC and Corizon employees;

y.  Failure to take significant steps to prevent a known risk of denial of medical care and treatment;

z.  Tolerance of misconduct of correctional facility officers, facility medical personnel, and employees and failing to follow up and properly and thoroughly investigate misconduct of correctional facility officers, facility medical personnel, and employees of TCF, KDOC, and Corizon resulting in the denial of medical care for incarcerated citizens;

aa. Deliberate indifference to, and conscious disregard of, a high risk that correctional facility officers, facility medical personnel, and employees would deny medical care and treatment to incarcerated citizens in violation of Plaintiff's protected rights;

bb. Inadequate training and instruction of employees charged with the supervision, observation and care of inmates, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of inmates without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States;

cc. Inadequate supervision of employees charged with the supervision, observation and care of inmates, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of detainees and suspects without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States;

dd. Inadequate discipline of employees charged with the supervision, observation and care of inmates, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of detainees and suspects without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States; and

ee. Inadequate supervision, training, and retention with resulting poor personnel decisions as to employees charged with the supervision, observation and care of detainees and suspects, like Plaintiff, and the duty to maintain and keep such persons in a secure, humane, and safe condition and to avoid cruel and unusual punishment, as well as punishment of detainees and suspects without due process of law, which is barred by the Eighth and Fourteenth Amendments of the Constitution of the United States.

112.    Defendants TCF, KDOC and Corizon had acquired, before and during the time periods of the events described herein this First Amended Complaint, each of the policies, practices, patterns of conduct and customs listed in this Count.

113.    These interrelated policies, practices, patterns of conduct and customs, separately and together, were intentionally implemented to deprive possible inmates and other targets of criminal investigations of their constitutional rights, or, at the very least, were implemented with a deliberate indifference to the rights of inmates and possible targets of criminal investigation and seizure and were a direct and proximate cause of and a moving force behind the Constitutional violations and injuries, as set forth in this First Amended Complaint.

114.    Plaintiff is therefore entitled to monetary relief.

115.    Defendants KDOC, TCF, and Corizon and their employees' official acts and omissions, were not only intentionally willful, wanton, reckless, and malicious – in that they are the product of corporate utilization management practices that elevate cost savings over prevailing medical practices and patient care – but they also evince a complete and deliberate indifference to and conscious and reckless disregard of the rights of Plaintiff and all inmates in the custody of defendant KDOC. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient to punish defendants KDOC, TCF, and Corizon or deter said defendants and other from like conduct in the future.

116.    Plaintiffs are entitled to their reasonable attorney fees, costs, and expenses from Defendants as provided by 42 U.S.C. § 1983.

### COUNT IV – Medical Negligence/Malpractice

**(Against Defendants Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, Meyer, Corizon and John and Jane Does #1-30)**

117.     Each and every one of the paragraphs in this First Amended Complaint is adopted by reference as if restated fully herein.

118.     At all times relevant to the acts complained of herein, defendants in this Count IV had a duty to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of their profession in the treatment and care of Plaintiff.

119.     The individual defendants, Edds, Hiramoto, Mackey, Cox, Herrman, Emery, Earleyline, Meyer and John and Jane Does #1 – 30 were all agents and/or employees of defendant Corizon and were, at all times relevant, acting within the course and scope of their employment with defendant Corizon.

120.     Defendant Corizon is vicariously liable under the doctrine of *respondeat superior* for the negligent acts, errors and omissions of the defendants in paragraph 119 above.

121.     Defendant Corizon is also liable for its own acts of negligence as described more fully in Count V below and herein this First Amended Complaint.

122.     Defendants in paragraph 121 above breached their respective duties and committed the following acts of negligence and carelessness by failing to comply with the standards of due care, skill and practice required by members of their profession, to wit:

a. Failing to timely order scans, diagnostic testing, and/or other tests upon review of Plaintiff's medical records and complaints and upon observations of Plaintiff;

b. Negligently and carelessly failing to take timely action upon review of Plaintiff's medical records and complaints and upon observations of Plaintiff, particularly her profuse bleeding from her rectum;

c. Negligently and carelessly communicating and/or failing to communicate Plaintiff's condition and care and treatment plan to from one shift of medical

personnel to the next shift of medical personnel and/or others involved in the care and treatment of Plaintiff;

d.  Negligently and carelessly failing to prescribe, order and provide plaintiff with medication to treat her rectal bleeding;

e.  Negligently, carelessly and repeatedly ignoring plaintiff's symptoms of rectal bleeding even after repeatedly seeing and hearing about plaintiff's symptoms of rectal bleeding;

f.  Negligently and carelessly failing to timely order and carry out a colonoscopy for plaintiff; and

g.  Negligently and carelessly failing to perform and comply with the requisite standards of due care and skill required and observed by licensed physicians and further particulars presently unknown to Plaintiff, but which is believed and alleged will be disclosed following proper discovery during the course of this litigation.

123.  As a direct and proximate result of the carelessness and negligence of the Defendants in paragraph 122 above as set forth above and herein this First Amended Complaint, Plaintiff was caused to suffer the following severe, debilitating and devastating injuries, including but not limited to:

a.  Suffering the loss of a significant portion of her colon, requiring surgical placement of an ostomy, which she will have the rest of her life;

b.  Being forced to endure great pain, suffering, and mental anguish;

c.  Requiring lifetime medical care and treatment as a result of the loss of her colon;

d.  Weakness, lethargy, and the loss of her ability to enjoy life; and

e.  The shortening of her life expectancy and healthy quality of life.

124.    As a direct and proximate result of the foregoing, Plaintiff has been damaged.

125.    Plaintiff is entitled to monetary relief.

126.    The negligent acts, errors and omissions described herein and above constitute malice and/or a reckless disregard for the safety, health and well-being of plaintiff when defendants' medical training, experience and the medical literature required them to act quickly to save plaintiff's life and her bowel. In failing to do so in the face of overwhelming evidence of plaintiff's profuse bleeding, complaints, and rapidly decompensating medical condition, plaintiff is entitled to recover punitive damages in an amount that are fair and reasonable.

## COUNT V – Medical Negligence/Malpractice

### (Against Defendant Corizon Health, Inc.)

127.    Each of the paragraphs in this First Amended Complaint is adopted by reference as if restated fully herein.

128.    At all times relevant to the acts complained of herein, Corizon had a duty to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of their profession in the treatment and care of Plaintiff.

129.    Defendant Corizon breached its duty and committed the following acts of negligence and carelessness by failing to comply with the standards of the care, skill and practice required by members of their profession, to wit:

    a.  Failing to have fail-safe protocols, rules, standing orders, house rules and/or other means by which timely orders for scans, diagnostic testing, and/or other tests upon review of Plaintiff's medical records and complaints and upon observations of Plaintiff can be made;

b.  Failing to have fail-safe protocols, rules, standing orders, house rules and/or other means by which timely action may be taken upon review of Plaintiff's medical records and complaints and upon observations of Plaintiff, particularly her profuse bleeding from her rectum;

c.  Failing to have fail-safe protocols, rules, standing orders, house rules and/or other means by which communication of Plaintiff's condition and care and treatment plan from one shift of medical personnel to the next shift of medical personnel and/or others involved in the care and treatment of Plaintiff can be made;

d.  Failing to have fail-safe protocols, rules, standing orders, house rules and/or other means by which medical personnel can prescribe, order and provide plaintiff with medication to treat her rectal bleeding;

e.  Failing to have fail-safe protocols, rules, standing orders, house rules and/or other means by which medical personnel can order and carry out a colonoscopy for Plaintiff;

f.  Negligently and carelessly failing to perform and comply with the requisite standards of due care and skill required and observed by licensed physicians and further particulars presently unknown to Plaintiff, but which is believed and alleged will be disclosed following proper discovery during the course of this litigation.

130.  As a direct and proximate result of the carelessness and negligence of Corizon as set forth above and herein this First Amended Complaint, Plaintiff was caused to suffer the following severe, debilitating and devastating injuries, including but not limited to:

a.  Suffering the loss of a significant portion of her colon, requiring surgical placement of an ostomy, which she will have the rest of her life;

    b.   Being forced to endure great pain, suffering, and mental anguish;

    c.   Requiring lifetime medical care and treatment as a result of the loss of her colon;

    d.   Weakness, lethargy, and the loss of her ability to enjoy life; and

    e.   The shortening of her life expectancy and healthy quality of life.

131.    As a direct and proximate result of the foregoing, plaintiff has been damaged.

132.    Plaintiff is entitled to monetary relief.

133.    The acts, errors and omissions described herein and above constitute malice and/or a reckless disregard for the safety, health and well-being of plaintiff when defendants' medical training, experience and the medical literature required Corizon to act quickly to save plaintiff's life and her bowel. In failing to do so in the face of overwhelming evidence of plaintiff's profuse bleeding, complaints, and rapidly decompensating medical condition, plaintiff is entitled to recover punitive damages in an amount that are fair and reasonable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment, including interest, against Defendants and respectfully requests the Court enter judgment in favor of plaintiff and against Defendants as follows:

1. Awarding Plaintiff damages according to proof;

2. Awarding Plaintiff any additional damages that she may suffer from the date of this First Amended Complaint through the date of trial;

3. Awarding Plaintiff pre- and post-judgment interest;

4. Awarding Plaintiff her reasonable costs and attorneys' fees;

5. Awarding Plaintiff compensatory and punitive damages; and

6. Awarding Plaintiff such other relief the Court deems just and proper.

Respectfully submitted,

THE MCCALLISTER LAW FIRM
A PROFESSIONAL CORPORATION

By:   */s/ Brian F. McCallister*
      Brian F. McCallister KS#14021
      Andrew D. Ferrell     DKS#78596
      917 W. 43rd Street
      Kansas City, Missouri 64111
      Telephone: (816) 931-2229
      Facsimile: (816) 756-1181
      Email: brian@mccallisterlawfirm.com
             andrew@mccallisterlawfirm.com
      *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL/DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby demands a jury trial on all of the allegations contained in this First Amended Complaint under Federal Rule of Civil Procedure 38(b) on all issues triable to a jury as a matter of right. Plaintiff designates Kansas City, Kansas as the place of trial.

Respectfully submitted,

THE MCCALLISTER LAW FIRM
A PROFESSIONAL CORPORATION

By:   */s/ Brian F. McCallister*
      Brian F. McCallister   KS#14021
      Andrew D. Ferrell      DKS#78596
      917 W. 43rd Street
      Kansas City, Missouri 64111
      Telephone: (816) 931-2229
      Facsimile: (816) 756-1181
      Email: brian@mccallisterlawfirm.com
             andrew@mccallisterlawfirm.com
      *Attorneys for Plaintiff*